*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0045P (6th Cir.)
File Name: 01a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

WATCHTOWER BIBLE AND
TRACT SOCIETY OF NEW
YORK, INC.; WELLSVILLE,
OHIO, CONGREGATION OF
JEHOVAH'S WITNESSES, INC.,
     *Plaintiffs-Appellants*
     *(99-4087)/Appellees,*


     *v.*


VILLAGE OF STRATTON, OHIO;
JOHN M. ABDALLA, Mayor of
the Village of Stratton, Ohio,
in His Official Capacity,
     *Defendants-Appellees/*
     *Appellants (00-3325).*

Nos. 99-4087;
00-3325

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00526—Edmund A. Sargus, Jr., District Judge.

Argued: September 21, 2000

Decided and Filed: February 20, 2001

Before:  MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**  Paul D. Polidoro, LAW OFFICE OF PAUL D.
POLIDORO, Patterson, New York, for Plaintiffs.  Abraham
Cantor, Concord, Ohio, for Defendants.  **ON BRIEF:**  Paul
D. Polidoro, LAW OFFICE OF PAUL D. POLIDORO,
Patterson, New York, Susan B. Gellman, WOLMAN,
GENSHAFT & GELLMAN, Columbus, Ohio, Richard D.
Moake, ASSOCIATE GENERAL COUNSEL,
WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
YORK, INC., Patterson, New York, for Plaintiffs.  Abraham
Cantor, Concord, Ohio, for Defendants.  Barry M. Byron,
Willoughby, Ohio, for Amicus Curiae.

KENNEDY, J., delivered the opinion of the court, in which
MERRITT, J., joined. GILMAN, J. (pp. 26-30), delivered a
separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

KENNEDY, Circuit Judge.  This  case comes to the court
on the consolidated appeals of plaintiffs, Watchtower Bible
and Tract Society of New York, Inc. and Wellsville, Ohio,
Congregation of Jehovah's Witnesses, Inc.; and of defendants,
the Village of Stratton, Ohio, and its Mayor, John M. Abdalla.
Plaintiffs appeal the district court's judgment denying
portions of their First Amendment challenges to the Village's
solicitation and canvass ordinance.  On appeal they argue that
the ordinance is facially unconstitutional because it is overly
broad and vague, and, as applied, the ordinance violates their
rights to free speech and free exercise of religion. Defendants
appeal the district court's judgment awarding plaintiffs

*Rockford,* 408 U.S. 104, 116 (1972). Consequently, "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Group, Inc.,* 120 S. Ct. 1878, 1888 (2000). This burden, however, "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a *material degree*." *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995) (applying the intermediate scrutiny standard to restrictions on legal advertising) (citations omitted and emphasis added). In this case, the Village of Stratton has failed to demonstrate either the reality of the harm or the efficacy of the restriction.

For all of the reasons set forth above, I would hold that the ordinance's permit requirement is an unconstitutional infringement on the Jehovah's Witnesses' First Amendment rights.

attorneys' fees as a prevailing party in the First Amendment litigation. They argue that the court erred in finding that plaintiffs were entitled to attorneys' fees, and in the alternative, if this court determines that plaintiffs were entitled to such fees, the amount the court awarded was unreasonable.

Because the ordinance is neither unconstitutionally overbroad nor vague and it is narrowly tailored to serve significant government interests, we affirm the district court's judgment finding the majority of the ordinance constitutionally permissible. And because the district court did not abuse its discretion in awarding plaintiffs reasonable attorneys' fees, we affirm that judgment as well.

## I. FACTS

This dispute centers on the Village of Stratton's ordinance regulating the soliciting and canvassing of private homes in the Village. By its terms, the ordinance applies to "canvassers, solicitors, peddlers, [or] hawkers" that go on a private residence in the Village for the "purposes of advertising, promoting, selling and/or explaining any product, service, organization or cause." Such individuals must first register with the Office of the Mayor by filling out a Registration Form. The Registration Form requires the individuals to furnish information about their cause, why they are canvassing, which residences they intend to canvass, how long they intend to canvass, and any "other information concerning the Registrant[s] and [their] business or purpose as may be reasonably necessary to accurately describe the nature of the privilege desired."[1] Once the individuals have

---

[1] Specifically, the relevant section of the Ordinance reads:
The Form shall be completed by the Registrant and it shall then contain the following information:
(1) The name and home address of the Registrant and Registrant's residence for five years next preceding the date of registration;
(2) A brief description of the nature and purpose of the business,

registered, they "shall be furnished a Solicitation Permit" unless the Mayor determines that they (1) failed to complete the Registration Form, (2) provided fraudulent information on the form, (3) made false or fraudulent statements or misrepresentations while canvassing, (4) violated any other local, state, or federal laws, (5) trespassed while canvassing, or (6) ceased to possess the qualifications required to obtain a Solicitation Permit.[2] No fee is required to obtain a permit. Upon obtaining a permit, the canvassers may canvass any private residence in the Village between the hours of 9:00am and 5:00pm, provided the owner of the residence has not filed a No Solicitation Form with the Mayor's Office and has not posted a No Solicitation Sign on his property. Prior to this litigation, a No Solicitation Form contained a list of various organizations next to which the resident could place a checkmark to indicate the organizations the resident wished to be excluded from this general prohibition. While the No Solicitation Form listed several organizations by name, the only religious organization it listed by name was the Church of Jehovah's Witnesses.

---

promotion, solicitation, organization, cause, and/or the goods or services offered;
(3)   The name and address of the employer or affiliated organization, with credentials from the employer or organization showing the exact relationship and authority of the Applicant;
(4)   The length of time for which the privilege to canvass or solicit is desired;
(5)   The specific addresses of each private residence at which the Registrant intends to [canvass]; and
(6)   Such other information concerning the Registrant and its business or purpose as may be reasonably necessary to accurately describe the nature of the privilege desired.

[2]For the purposes of this opinion, we will refer to any activity covered by the ordinance as canvassing and those individuals engaging in such activities as canvassers.

view, incorrectly) that those intending to commit fraud would in fact register at all.

As to the Village's asserted interest in protecting homeowners from "unwanted annoyances," this interest can be achieved by less restrictive means, such as by enforcing laws against trespass. *See Discovery Network, Inc. v. City of Cincinnati*, 946 F.2d 464, 473 n.14 (6th Cir. 1991) (finding unconstitutional, even under intermediate scrutiny, a Cincinnati ordinance prohibiting the distribution of commercial handbills on public property because "there are many options available to the city that would address its aesthetic, safety, and proliferation concerns without placing the significant burden on commercial speech that the ordinance does").

Indeed, the Village already effectively achieves its interest in protecting homeowners from unwanted annoyances through the section of the ordinance that forbids solicitation at residences where the homeowners have posted "No Solicitation" signs. The same penalty, a fourth-degree misdemeanor, is imposed for violating the "No Solicitation" section as for violating the registration section of the ordinance. Thus someone who would register because they are deterred by the penalty for failing to do so would presumably already be deterred from ignoring a "No Solicitation" sign, while someone who is willing to risk the penalty imposed for ignoring a "No Solicitation" sign would presumably also be willing to risk the penalty for failing to register. The registration requirement, accordingly, is not narrowly tailored to protect homeowners from unwanted annoyances. *See Ward*, 491 U.S. at 799 (stating that a regulation is narrowly tailored under the intermediate scrutiny standard if it "promotes a substantial government interest that would be achieved less effectively absent the regulation").

"Our cases make clear that in assessing the reasonableness of a regulation [that affects speech], we must weigh heavily the fact that communication is involved." *Grayned v. City of*

because it gives public officials the power to deny the use of a forum in advance of actual expression. *See Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1390 (D.C. Cir. 1990) (finding unconstitutional, on the basis of intermediate scrutiny, an ordinance requiring permits of all people wishing to engage in content-neutral, noncommercial speech on transit authority property, where the "[p]ersons desiring to engage in any organized free speech activities in the . . . forum are subject to the permit requirement"). Consequently, the type of persons and entities subject to the permit requirement must be analyzed to determine an ordinance's impact on speech. *See id.* at 1393.

The majority also states that the Jehovah's Witnesses "may spread their message at stores, on street corners, in restaurants, in parks, and other public forums." Majority Op. at 21. The Supreme Court, however, has stressed the unique role of door-to-door solicitation as a means of communication, stating that "as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking political support . . . . Door to door distribution of circulars is essential to the poorly financed causes of little people." *Martin v. City of Struthers*, 319 U.S. 141, 146 (1943). I believe that this reasoning applies with equal force to the communication of religious beliefs. The availability, therefore, of other outlets for such speech does not alleviate the special burden that this ordinance places on door-to-door solicitation.

The narrowly tailored requirement demands a balance between the legitimate interests of the government and the constitutional rights of individuals. However, the majority opinion concludes in a very generalized way that the Village of Stratton's registration requirement is constitutional because it "more effectively promotes the Village's interest." Majority Op. at 19. But just as the majority accuses the dissent of assuming that those who intend to commit fraud would register as salespeople, the majority assumes (in my

If individuals covered by the ordinance fail to comply with these requirements, they could be charged with a misdemeanor of the fourth degree.

Plaintiffs challenged the ordinance in district court seeking a declaratory judgment that the ordinance is unconstitutional on its face and as applied to them and seeking a permanent injunction prohibiting the Village from enforcing the ordinance against them. After conducting a bench trial on the matter, the district court found that the ordinance applied to plaintiffs as they were "canvassers" seeking to explain their "cause." Moving to the constitutionality of the ordinance, the court rejected most of plaintiffs' arguments as without merit. The court did, however, find three provisions of the ordinance and one provision of an administrative form--some of which plaintiffs did not specifically challenge in their complaint-- potentially constitutionally troubling, and therefore, took action to address those concerns. First, the court found that the 5:00pm time restraint contained in the ordinance was an unreasonable restriction on time and ordered the Village to change the time restraint to allow for canvassing during all daylight hours. Second, it found that the section of the No Solicitation Form which singled out Jehovah's Witnesses was unconstitutional and ordered the Village to delete any reference to Jehovah's Witnesses from the No Solicitation Form. Third, it found that in order for the ordinance's "additional information" requirement to be constitutional, Jehovah's Witnesses need only "note on the application that [they] seek[] to canvass as part of the Jehovah's Witness." Accordingly, the court construed the provision to require only that. Finally, it found that requiring plaintiffs to list on the Registration Form each residence they intended to visit was "an onerous regulation that could potentially violate the exercise of constitutional rights"; however, this problem was cured by the "Village allowing a Registrant to attach to the Registration Form a list of willing Village residents which is provided by the Mayor's office." It appears from the record that this was a voluntary measure taken by the Village prior to the lawsuit.

Unsatisfied with the scope of this relief, plaintiffs filed a timely notice of appeal from the court's judgment. The notice reads, "Plaintiffs . . . hereby appeal . . . those parts of the [district court's] Order . . . which uphold the constitutionality[--]facially and as applied to the Plaintiffs"--of the ordinance.[3]

In addition to filing an appeal, plaintiffs, based upon the judgment on the merits, filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988. The district court determined that plaintiffs were a prevailing party and therefore entitled to attorneys' fees. After reducing the requested award, the court awarded plaintiffs $58,892.41 in attorneys' fees and costs. Defendants filed a timely notice of appeal from that judgment.

The appeals are now consolidated and before us.

## II.  CONSTITUTIONALITY OF THE ORDINANCE

The First Amendment to the United States Constitution provides, "Congress shall make no law . . . prohibiting the free exercise [of religion]; or abridging the freedom of speech, or of the press." U.S. CONST. amend. I. The Supreme Court has made the First Amendment's prohibitions applicable to

---

[3]Plaintiffs are not appealing the portion of the ordinance the district court found unconstitutional and revised nor do they question the legitimacy of that ruling. Consequently, those questions are not before us. While we would likely have no problems with the court's decision to strike the time restriction provision from the ordinance as we believe it is severable under Ohio law, *see Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 202-03 (6th Cir. 1997), we would have a more difficult time with the court's attempt to rewrite that provision, *see Wilson v. National Labor Relations Bd.*, 920 F.2d 1282, 1289 (6th Cir. 1990) (recognizing that "courts cannot judicially redraft statutory language"). We are not concerned with the court's revision of the administrative forms as they are not part of the ordinance. Likewise, we are not concerned by the construction of the "additional information" provision of the ordinance, as courts routinely construe legislation so as to avoid constitutional problems.

without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Id.* at 800 n.7.

In the present case, the Village has articulated a legitimate interest in eliminating two evils — fraud and unwanted annoyance. The question, then, is whether the means chosen by the Village to implement its goals significantly restricts a substantial quantity of speech that does not create the same evils. I am of the opinion that the ordinance does just that.

First, by subjecting noncommercial solicitation to its permit requirements, the ordinance restricts a substantial amount of speech unrelated to the prevention of fraud. The ordinance requires a permit not only for those wishing to engage in sales transactions — a possible avenue for fraud — but also for those wishing to engage in political, religious, or social advocacy. Indeed, the Village's own "No Solicitation Registration Form" acknowledges that the ordinance reaches political candidates, Christmas carolers, and campaigners for social issues, none of whom create the threat of fraud that the Village intended to address. The ordinance therefore burdens substantially more speech than is necessary to promote the legitimate government interest of fraud protection. *See Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 383, 386-90 (6th Cir. 1996) (applying an intermediate scrutiny standard to declare an ordinance unconstitutional that banned all yard signs, concluding that the ordinance burdened substantially more speech than necessary to promote the legitimate government interest in aesthetics).

The majority emphasizes that "the ordinance does not foreclose the option of going door-to-door; one only need register first." Majority Op. at 20-21. Such an argument implies that because a person can engage in speech once he or she has obtained a permit, all permit requirements are constitutional. This is clearly *not* the law. *See Cantwell,* 310 U.S. at 303-07. Although a permit requirement is not per se invalid, it bears a heavy burden to pass constitutional muster

---

## CONCURRING IN PART, DISSENTING IN PART

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part.  I agree with the majority that the Village of Stratton's ordinance is not unconstitutionally vague and does not violate the free exercise rights of the Jehovah's Witnesses.  Because the ordinance is content neutral on its face, I also agree that intermediate scrutiny is the proper standard applicable to its review.  Finally, I agree with the majority's decision to affirm the award of attorneys fees to the Jehovah's Witnesses.

I disagree, however, with the majority's application of the intermediate scrutiny standard, and would hold that the ordinance violates the First Amendment by burdening substantially more speech than is necessary to further the Village's legitimate interests.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  Consequently, I would declare that the ordinance's permit requirement is unconstitutional as applied to the Jehovah's Witnesses.

The Supreme Court has long since recognized that the regulation of door-to-door solicitors must comport with the First Amendment.  *See Cantwell v. Connecticut*, 310 U.S. 296 (1940) (striking down an ordinance specifically requiring door-to-door solicitors for religious, charitable, or philanthropic causes to first obtain a permit).  Content-neutral regulations, on the other hand, are analyzed under an intermediate scrutiny standard of review.  *See Ward*, 491 U.S. at 798-99 (applying intermediate scrutiny to content-neutral noise regulations).  This standard, however, does not mean that a content-neutral regulation "may burden substantially more speech than is necessary to further the government's legitimate interests."  *Id.* at 799.  Rather, a content-neutral regulation must "focus[] on the source of the evils the [government] seeks to eliminate" and "eliminate them

the states through the Fourteenth Amendment.  *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Because state action includes municipal ordinances adopted under state authority, *see Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938), the prohibitions extend to ordinances such as the one promulgated by Stratton.  And because Stratton's ordinance requires canvassers to register prior to canvassing, it "carries with it (unless properly constrained) the power directly and substantially to affect speech" and must therefore undergo Free Speech Clause analysis.  *Riley v. National Fed'n of the Blind*, 487 U.S. 781, 801 (1988).  And for similar reasons, it must also undergo Free Exercise Clause analysis.

### A.  Free Speech Challenges

Plaintiffs contend that the ordinance's requirement that canvassers register prior to canvassing fails the Free Speech Clause analysis both facially and as applied to them.  Predictably, much of their argument is dedicated to attempting to convince us that the ordinance is subject to strict scrutiny.  And as equally predictable, the Village dedicates a large portion of its brief to arguing that the ordinance is subject to some lower level of scrutiny.

### 1.  Level of Judicial Scrutiny

As an initial matter, we note that the Supreme Court has not set forth a framework for determining what level of scrutiny to apply to laws that require an individual to obtain a permit prior to going door-to-door.  It has, however, established a framework for answering the question in the context of laws requiring an individual to obtain a permit prior to engaging in speech in a public forum.  *See Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992).  We conclude that the analytical framework set forth there applies to this ordinance as well.  We reach this conclusion because, in discussing what standard applied to the County's ordinance, the Court characterized its analysis as one of whether the law's restrictions on speech were reasonable in the context of time,

place, and manner. As that analysis applies to all laws through which government regulates oral or written expression, *see Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 299 n.8 (1984), and the ordinance regulates oral and written expression, it is subject to the reasonable, time, place, and manner analysis.[4]

Under that framework, a law that is content based is subject to strict scrutiny. *See Turner Broad. Sys., Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 642 (1994). On the other hand, a law that is content neutral and of general applicability is subject to some form of intermediate scrutiny. *See Community for Creative Non-Violence*, 468 U.S. at 293.

Using that framework, the district court determined that the ordinance was content neutral and of general applicability and therefore subject to intermediate scrutiny. Plaintiffs argue that the district court erred and urge us to review the ordinance under strict scrutiny. Strict scrutiny applies, they argue, because the ordinance potentially infringes upon two constitutionally protected rights--freedom of speech and freedom of religion--thereby making their claim a "hybrid rights" claim. And, they continue, the Supreme Court in *Employment Division v. Smith*, 494 U.S. 872 (1990), established that such claims subject the law in question to strict scrutiny. Hybrid rights claims aside, they argue, strict scrutiny applies because the ordinance discriminates based on the content of the speech. That discrimination is evidenced by the reference to Jehovah's Witnesses in the No Solicitation Form and the Mayor's testimony that he would not furnish Jehovah's Witnesses with an exemption from the time restraints. In either case, they conclude, we must apply strict scrutiny when reviewing the ordinance.

---

[4] The alternative would be to analyze the ordinance under the standard set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), and its progeny. That standard "is little, if any, different from the standard applied to time, place, or manner restrictions." *Community for Creative Non-Violence*, 468 U.S. at 298.

*Drivers Ass'n, Inc. v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000).

We have no trouble agreeing with the district court's conclusion that plaintiffs were in fact the prevailing party. As a result of the litigation, their legal relationship with the Village was altered in a manner which they sought. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The question of whether this success is sufficient to be considered substantial is much tougher. The Village is correct that plaintiffs must still register prior to canvassing, and eliminating that requirement was a focal point of their lawsuit. As it is a close call, we defer to the factual findings of the district court and conclude that it did not abuse its discretion in awarding attorneys' fees in the amount of $39,340.87; $15,464.04 in out of pocket expenses; and $4,087.50 for paralegal costs.

Therefore, we affirm the district court's judgment awarding plaintiffs attorneys' fees and costs.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgments.

beliefs are a matter of deep rooted religious convictions and complying with the regulation would violate those convictions, the individual should be granted an exemption from complying with the regulation.

That is not the law. As the Court noted in *Smith*, it "has never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*, 494 U.S. at 878-79. Our review indicates that the ordinance is valid, and therefore, plaintiffs must comply with it.

In conclusion, we affirm the district court's judgment that the ordinance does not violate plaintiffs' First Amendment rights and we deny them an exemption from complying with the ordinance. We now review the Village's challenges to the district court's judgment awarding plaintiffs attorneys' fees.

### III. ATTORNEYS' FEES

Briefly, the Village argues that the district court erred in awarding attorneys' fees by concluding (1) that plaintiffs were the prevailing party and (2) that they obtained substantial relief and were thus entitled to compensation for the time their attorneys expended on the entire course of the litigation. It contends that plaintiffs' relief was so small--and not of the type sought--that they cannot be considered the prevailing party. And, even if they are, by no means did they obtain the relief for which they hoped--being exempted from complying with the ordinance--and therefore cannot be considered to have achieved substantial success.

In reviewing an award of attorneys' fees under § 1988, we review the factual findings underlying the district court's determination of prevailing status for clear error and its award of attorneys' fees for abuse of discretion. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). "A district court abuses its discretion when it relies on clearly erroneous findings of facts" or "when it improperly applies the law or uses an erroneous legal standard." *Owner-Operator Indep.*

We cannot agree. Our review of the ordinance leads us to conclude it is content neutral and of general applicability, and hence, subject to intermediate scrutiny. A law is content neutral and of general applicability if on its face and in its purpose it does not make a distinction between favored and disfavored speech. *See Turner Broad.*, 512 U.S. at 642-50. On its face, there is no indication that the *ordinance* distinguishes between favored and disfavored speech; it requires all individuals seeking to canvass to register irrespective of the content of their message. *See Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). Nor do we find any evidence that the Village's purpose in promulgating the ordinance was to regulate speech based on the message it conveys. Instead, our review indicates that the Village's principal objective in promulgating the ordinance was to prevent fraud and protect the privacy interests of the residents of the Village. *See Ward v. Rock Against Racism*, 491 U.S. 781, 792 (1989).

The evidence plaintiffs cite in support of their argument misses the mark. That the No Solicitation Form listed Jehovah's Witnesses is not evidence that the Village's purpose in promulgating the ordinance was to restrict their speech; rather, it is evidence of the Village's administration of the ordinance. And that evidence does not indicate that the Village applied the ordinance unequally. It may simply be that Jehovah's Witnesses, along with the other organizations listed on the form, canvassed or solicited more frequently than other groups, thereby making it efficient to place their name on the form. Likewise, the testimony of the Mayor that he would not grant Jehovah's Witnesses an exemption from the ordinance's hours restriction is not evidence of the purpose of the Village in promulgating the ordinance. Nor is it evidence of the Village's application of the ordinance, as plaintiffs have not applied for an exemption. We do note, as the district court did, that were we to find disparate treatment in the granting of exemptions from the time restraints, we would be troubled. However, as our review finds nothing of the sort, we believe the ordinance is neutral on its face and the

Village's purpose in promulgating it was content neutral. Therefore, we hold that it is subject to intermediate scrutiny.

In so holding, we reject plaintiffs' assertion that the Supreme Court established in *Employment Division v. Smith* that laws challenged by hybrid rights claims are subject to strict scrutiny. While much debate has revolved around the Court's language in *Smith*, we do not believe the Court held there, nor has it ever held, that a different level of scrutiny applies to laws that potentially affect hybrid rights. In rejecting the plaintiffs' argument that "'prohibiting the free exercise [of religion]' includes requiring any individual to observe a generally applicable law," the *Smith* Court noted,

> The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press . . . .

*Smith*, 494 U.S. at 878, 881. That language was dicta and therefore not binding. Further, as we held in *Kissinger v. Board of Trustees of the Ohio State University*, 5 F.3d 177, 180 (6th Cir. 1993), aside from the fact that the *Smith* Court did not hold that a hybrid rights claim subjects a law to a higher level of scrutiny, the Court did not explain how a hybrid rights claim would alter the level of scrutiny (we note that the one probably had a lot to do with the other). Based in part upon the lack of an explanation from the Court, we declined to alter the standard of scrutiny for laws affecting hybrid rights until the Supreme Court provided guidance. The Court has yet to provide such guidance, and therefore, we adhere to our decision in *Kissinger* and continue to decline to alter the standard of scrutiny. Accordingly, the district court was correct to subject the ordinance to intermediate scrutiny in analyzing the merits of plaintiffs' free speech claims.

ordered the Village to remove that language. The ordinance is also neutral in its operation; it imposes the same burdens on all individuals or organizations seeking to canvass door-to-door. *See id.* at 535. Finally, we believe that the Village officials have applied the ordinance neutrally. There is no indication that the Mayor discriminated against religious organizations in determining whether to grant permits. Indeed, there is little room for him to make any decision once the applicant completes the Registration Form. And contrary to plaintiffs' assertion, the Mayor's statements that he would not grant Jehovah's Witnesses an exemption from the ordinance's time restrictions on canvassing does not compel a finding that he unequally applied the ordinance. He has never applied the ordinance's time restrictions to them because they have never requested an exemption from the restrictions.

We also find that the law is of general applicability. To be generally applicable, the law must not be the product of a government action that, in pursuit of legitimate interests, "impose[s] burdens only on conduct motivated by religious belief essential to the protection of the rights guaranteed by the Free Exercise Clause." *Id.* at 543. The ordinance is not the product of such action. The Village has made clear that its interest was in preventing fraud and protecting its residents from undue annoyance. In pursuing these ends, the ordinance burdens any individual seeking to canvass door-to-door. As the ordinance is content neutral and generally applicable, we hold that it does not violate plaintiffs' free exercise rights.

### 2. Exemption from the Ordinance

For the same reason, we deny plaintiffs' request for an exemption from the requirements of the ordinance. Plaintiffs argue that they should be granted an exemption from the ordinance because seeking permission to spread their religious beliefs violates their religious convictions. To support their argument they cite *Wisconsin v. Yoder*, 406 U.S. 205 (1972), for the proposition that where an individual's

cases] did the Supreme Court hold that Jehovah's Witnesses must obtain a permit prior to engaging in door-to-door dissemination of Bible-based ideas or literature." That is probably because few of those cases involved an ordinance requiring such a permit. Instead, many of the ordinances flatly prohibited the dissemination of ideas either in a public forum or door-to-door. *See Marsh v. Alabama*, 326 U.S. 501, 504 (1946); *Martin*, 319 U.S. at 142; *Schneider v. New Jersey*, 308 U.S. 147, 154, 156, (1939). The ordinances that did require a permit, unlike the Village's ordinance, left the decision whether to grant the permit at the discretion of a municipal officer. *See Tucker v. Texas*, 326 U.S. 517, 519 (1946); *Cantwell*, 310 U.S. at 302; *Schneider*, 308 U.S. at 158; *Lovell*, 303 U.S. at 451. In short, contrary to plaintiffs' assertions, not one of these cases mandates a finding that the ordinance violates their free exercise rights.

Nor does a general review of the ordinance under current law warrant such a finding. Under recent Supreme Court precedent, a law that is content neutral and of general applicability does not violate an individual's free exercise rights. *See Smith*, 494 U.S. at 879; *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993). One that is not content neutral or not of general applicability, on the other hand, must pass strict judicial scrutiny. *See Church of Lukumi Babalu Aye*, 508 U.S. at 531-32.

We find the law to be both content neutral and of general applicability. In the context of free exercise challenges, a law is not content neutral if "the object of the law is to infringe upon or restrict religious practices because of their religious motivation." *Id.* at 532. To determine whether the law has such an object, we look to the language of the law; the operation of the law; and how officials apply the law. *See id.* at 532-35. A law is facially content based if it refers to a religious practice without a discernable secular meaning. *See id.* at 532. The ordinance does not. While the No Solicitation Form did refer specifically to Jehovah's Witnesses, it is not part of the text of the ordinance. Further, the district court

### 2. Merits of Free Speech Claims

It bears emphasis that, contrary to plaintiffs' assertions, Supreme Court dicta is not on their side. On numerous occasions the Court has strongly suggested that registration schemes such as the Village's would pass constitutional muster.

> Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public. . . . Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent.

*Cantwell*, 310 U.S. at 306; *see also Martin v. City of Struthers*, 319 U.S. 141, 148 & n.14 (1943) (making clear that a city "can by identification devices control the abuse of the privilege by criminals posing as canvassers").[5]

---

[5] Several of our sister circuits have indicated in dicta that they would reject challenges to the identification portion of solicitation ordinances similar to Stratton's as well. *See, e.g., City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1557 (7th Cir. 1986) ("Watseka's attempt to safeguard its citizens' privacy and protect them from crime is laudable, and the majority of the ordinance's provisions are narrowly tailored to promote Watseka's objectives with only minimal interference with First Amendment rights. Indeed, IPAC is more than willing to comply with Watseka's registration requirements . . . . It is only the 5 p.m. to 9 p.m. complete ban on solicitation that fails to pass constitutional muster . . . ."); *Association of Cmty. Org. for Reform Now v. City of Frontenac*, 714 F.2d 813, 818-19 & n.7 (8th Cir. 1983) ("Frontenac has a legitimate interest in protecting its residents from crime. This objective can be served satisfactorily by enforcement of the city's application and identification for all canvassers, peddlers, and solicitors."). Additionally, the Third Circuit has facially upheld an ordinance requiring canvassers to obtain a license prior to going door-to-door. *See Pennsylvania Alliance for Jobs & Energy v. Council of the Borough of Munhall*, 743 F.2d 182, 188 (3d Cir. 1984).

We begin our review with a brief discussion of the differences between as applied and facial challenges. "If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). Consequently, "a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Id.* Generally, a plaintiff's burden in a facial challenge is higher: the plaintiff must prove that there is no set of circumstances in which the statute's application would be constitutional. *See id.* at 194. That is not the case, however, when the statute regulates speech. Because the remedy for successful facial challenges is broader in scope, we begin our analysis there.

### a. Facial Challenges

"In a facial challenge to the overbreadth and vagueness of a law, the court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge . . . ." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). We proceed accordingly.

### i. Unconstitutionally Overbroad

Plaintiffs argue the ordinance is unconstitutionally overbroad because it would have the effect of prohibiting individuals from going door-to-door to engage in political speech without first obtaining a permit. An effect, they allege, the Supreme Court effectively made unconstitutional in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334

Plaintiffs' argument that the ordinance effectively forecloses that option to them because of their religious convictions, as we will discuss below, is foreclosed by the Court's decision in *Employment Division v. Smith*.[10] Further, there are several alternatives to door-to-door canvassing: Jehovah's Witnesses may spread their message at stores, on street corners, in restaurants, in parks, and other public forums.

This is not to say, as the dissent suggests we are holding, that meeting the ample alternatives requirement alone is sufficient to pass constitutional muster. Indeed, if that were the case, we would have foregone the rest of the analysis, evaluated the alternatives available to Jehovah's Witnesses, and called it a day.

As the ordinance satisfies the ample alternatives as well as the other requirements of intermediate scrutiny, we hold that the ordinance does not violate plaintiffs' free speech rights.

### B. Free Exercise Claims

### 1. Whether the Ordinance is Unconstitutional

We reach the same conclusion with respect to plaintiffs' free exercise challenges. Other than arguments that the ordinance fails strict scrutiny, plaintiffs offer no arguments for why the ordinance violates their free exercise rights.

Instead, they cite a handful of Supreme Court cases all of which, they claim, stand for the proposition that the "Supreme Court has continuously held that Jehovah's Witnesses cannot be required to obtain a permit in order to engage in door-to-door religious speech." And that "[i]n not one [of those

---

[10]Plaintiffs and dissent argue that the Village could have included in the ordinance an exception from its requirements for Jehovah's Witnesses. If the Village had included such an exception, however, the ordinance would not be content neutral. Therefore, we do not believe that to be a viable alternative here.

such as Jehovah's Witnesses or are instead perpetrators of fraud using a Jehovah's Witnesses claim as cover. Requiring the individuals to identify themselves as having a relationship with the organization provides the Village with information helpful in making this assessment. Consequently, the ordinance better equips the Village in its attempt to turn away perpetrators posing as Jehovah's Witnesses. Moreover, the requirements go further than anti-fraud laws in deterring such individuals from committing fraud because they know the Village has information that would make it easier to apprehend them were they to do so.

We believe the dissent misunderstands our reasoning and the effect of the registration requirement. Its argument that the requirement burdens substantially more speech than necessary because it requires registration "not only for those wishing to engage in sales transactions--a possible avenue for fraud--but also for those wishing to engage in political, religious, or social advocacy" assumes too much. First, it assumes that the only avenue for engaging in fraud is posing as a sales person. That need not be the only avenue. Second, it assumes that one who intends to engage in fraud by posing as a sales person would be honest enough to inform the Village that he was intending to pose as a sales person and thus would register as such. That is not necessarily the case. It is also possible that the criminal would inform the Village that he was going to engage in political, religious, or social advocacy in order to avoid the registration requirement. It would be nice if the Village had the ability to discern in advance who, or what type of groups, will commit fraud. However, it does not. And absent such ability, the Village does not burden substantially more speech than necessary by requiring all individuals seeking to go door-to-door to register.

Moving to the final requirement of intermediate scrutiny, we believe that the ordinance leaves open ample alternatives of communication. Indeed, the ordinance does not foreclose the option of going door-to-door; one only need register first.

(1995), by invalidating an Ohio statute that prohibited the distribution of anonymous campaign literature. Because requiring individuals engaging in political speech to register before going door-to-door would effectively prevent them from remaining anonymous, they conclude, the ordinance is unconstitutional. They are mistaken.

*McIntyre's* holding misses Stratton's ordinance. The *McIntyre* Court established a First Amendment right to distribute political pamphlets anonymously. *See id.* at 357. We agree that read broadly, the opinion arguably includes in that right the ability to speak to others anonymously. But we do not understand how Stratton's ordinance inhibits this right. As we see it, individuals going door-to-door to engage in political speech are not anonymous by virtue of the fact that they reveal a portion of their identities--their physical identities--to the residents they canvass. In other words, the ordinance does not require canvassers going door-to-door to reveal their identities; instead, the very act of going door-to-door requires the canvassers to reveal a portion of their identities.

While the ordinance requires political canvassers to reveal the remainder of their identities, i.e., their names, we do not believe that requirement rises to the level of impinging on First Amendment protected speech the Court sought to protect by fashioning the right in *McIntyre*. By creating a right of anonymity, the Court sought "to protect unpopular individuals from retaliation--and their ideas from suppression." *Id.* Once the political canvassers are before the resident, the ability to protect them from those dangers is substantially diminished. Accordingly, there is little reason to read the Court's holding as protecting political canvassers from being required to reveal a portion of their identities when their very activity will

reveal other portions of their identity and subject them to scrutiny.[6]

### ii. Unconstitutionally Vague

A law is unconstitutionally vague when it does not afford a "person of ordinary intelligence a reasonable opportunity to know what is prohibited," *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972), or when it authorizes or encouragers arbitrary and discriminatory enforcement, *see Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Put more specifically, a statute is vague when the state has "fail[ed] to provide such minimal guidelines" that would prevent "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)) (alterations in the original). The ordinance is such a law, plaintiffs contend, because the meanings of the terms "solicitor," "canvasser," and "cause" are not clear. They offer no explanation for why "solicitor" and "canvasser" are vague; but contend that the Supreme Court has found the term "cause" to be vague.

We find no merit in any of these assertions. Only the last assertion requires any explanation. According to plaintiffs, the Supreme Court's decision in *Hynes v. Mayor & Council of the Borough of Oradell*, 425 U.S. 610 (1976), established that "the word 'cause' is unconstitutionally vague." Specifically, they point to footnote five of the opinion which states, "In the circumstances of this case these allegations are enough to put in issue the precision or lack of precision with which the ordinance defines the *categories* of 'causes' it covers." *Hynes*, 425 U.S. at 621 n.5 (emphasis added). The

---

[6] Even if *McIntyre* were implicated, we would find the ordinance constitutional on its face. In reviewing Ohio's statute, the Court applied strict scrutiny. As we have already noted, we are reviewing Stratton's ordinance under intermediate scrutiny. We believe the difference in scrutiny would be outcome determinative.

reasonable ground to fear that serious evil [would] result if free speech [were] practiced" without the ordinance. *National Treasury Employees Union*, 513 U.S. at 475. Accordingly, the Village was entitled to promulgate an ordinance that was narrowly tailored to promote its interests in preventing fraud and in protecting its residents from unwanted annoyance.

And from our review of the record, we believe that is what the Village did. The ordinance promotes the Village's interest in protecting the privacy of its residents by creating additional deterrents for canvassers, including Jehovah's Witnesses, who are considering ignoring a resident's wishes and canvassing the resident's home. A Jehovah's Witness is more likely to respect the resident's wishes not to be canvassed when a criminal penalty--albeit a light penalty--is connected to such conduct in addition to the threat of civil action. Thus, the penalty attached to canvassing the house of a resident with a No Solicitation Sign more effectively promotes the Village's interest. The ordinance's registration requirements also likely deter Jehovah's Witnesses from canvassing homes with No Solicitation Signs and forms because they are aware that the Village now has information-- name, address, organization or cause--helpful in apprehending someone who ignores a resident's wishes. The extra deterrence the ordinance creates promotes the Village's interest in protecting its residents from undue annoyance and that interest "would be achieved less effectively absent the [ordinance]." *Ward*, 491 U.S. at 799.

As to the latter method of furthering the interest--the registration requirement--the dissent misstates the issue. It is not whether the requirement deters by increasing the degree of punishment. Rather it is whether the requirement increases the likelihood of punishment. It does.

The Village's interest in preventing fraud would also be achieved less effectively absent the ordinance. Absent a registration requirement, the Village has no way of assessing whether canvassers are in fact affiliated with an organization

Village seeks to prevent--criminals posing as canvassers in order to defraud its residents--is a real threat. While the evidence of this reality is by no means overwhelming, we believe it is sufficient. That evidence consists of the testimony of Helen MacMurray, Ohio Assistant Attorney General; the Village's Mayor; and Frank Bruzzese, the Village's Solicitor. In her testimony, Ms. MacMurray stated that Ohio has had difficulty with several groups that perpetrate frauds by going door-to-door posing as solicitors or canvassers. And the testimony of the Village's Mayor and its Solicitor indicate that the Village was aware of problems in other Ohio cities with door-to-door fraud when it passed the ordinance. Plaintiffs argue the fact that Ohio has had problems with such fraud is insufficient to establish a real anticipated harm; they would instead require that Stratton itself have had problems with fraud before it could promulgate an ordinance to prevent fraud. That argument ignores the fact that the interest the ordinance promotes is preventing an *anticipated* harm. If we required the Village to wait until it had trouble with door-to-door fraud, we would be depriving it of a police power the Supreme Court has made clear municipalities possess. It also ignores the principle reaffirmed by the Supreme Court's holding in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 298 (2000), that a city may use evidence from the experiences of other cities that are similarly situated to establish a reasonable ground to believe that an anticipated harm is real. *See also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-53 (1986). As municipalities may take the experiences of other municipalities into account, we pay deference to the Village's predictive judgment and the district court's finding in substance that "there [was] a

---

our sister circuits have also held that the state's interest in protecting its citizens from undue annoyance is sufficient to support statutes facing intermediate scrutiny. *See, e.g., Van Bergen v. Minnesota*, 59 F.3d 1541, 1554 (8th Cir. 1995) (finding that Minnesota's interest in protecting its citizens from unwanted annoyances was a sufficient interest to regulate automated telephone calls); *Pennsylvania Alliance for Jobs & Energy*, 743 F.2d at 187.

---

language plaintiffs quote defeats their argument. As the language indicates, in finding the ordinance vague, the Supreme Court did not criticize the use of the word cause, rather it criticized the ordinance's modification of the word with the phrases "recognized charitable" and "Federal, State, County or Municipal." Specifically, the Court stated that the ordinance "does not explain, for example, whether 'Recognized charitable cause' means one recognized by the Internal Revenue Service as tax exempt, or one recognized by some community agency . . . [and] it is not clear what is meant by a 'Federal, State, County, or Municipal'" cause. *Id.* at 621. Because Stratton's ordinance does not modify the term cause but includes all causes, the holding of and the reasoning in *Hynes* is not applicable.

### b. As Applied Challenge[7]

In the context of an as applied challenge, a law requiring registration prior to engaging in speech would pass intermediate scrutiny if it were narrowly tailored to serve a significant government interest and left open ample alternatives for communication. *See Nationalist Movement*, 505 U.S. at 130. If the interest is in redressing past harm or preventing anticipated harms, the government must demonstrate that the harms are real. *See Edenfield v. Fane*, 507 U.S. 761, 770 (1993). An anticipated harm would be considered real if we determined that "there [was] a reasonable ground to fear that serious evil [would] result if free speech [were] practiced" without the regulation. *United*

---

[7]Although the Village has not brought an enforcement action against plaintiffs, we believe plaintiffs have standing to proceed on their as applied challenge. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979). Because plaintiffs have "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," they are not "required to await and undergo criminal prosecution as the sole means of seeking relief." *Id.* at 298 (internal citations and quotation marks omitted).

*States v. National Treasury Employees Union*, 513 U.S. 454, 475 (1995) (internal citations and quotation marks omitted). In making this determination, we pay deference to the predictive judgments of the government. *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 103 (1973). A law would be considered narrowly tailored to promote the governmental interests if the interest "would be achieved less effectively absent the regulation," *Ward*, 491 U.S. at 799, and the regulation does not "burden substantially more speech than is necessary" in furthering the interest, *id*. And finally, while it is unclear exactly what constitutes ample alternatives for communication, it is clear that this standard does not mean the least restrictive means of promoting the interest in question. *See id*. at 797-98.[8]

As applied to them, plaintiffs argue, the ordinance's registration scheme does not meet these standards because it does not promote a significant government interest and is not narrowly tailored to promote the interests that the Village alleges are significant. Specifically, they argue that the Village has no significant interest to promote because (1) its interest in protecting its residents from annoyance in their homes simply is not a significant governmental interest and (2) while a government's interest in preventing fraud is significant, the Village has not shown that there is a real threat of fraud to its residents. The ordinance is not narrowly tailored, they maintain, because it does not leave open ample alternative channels of communication. Given these flaws, they conclude, we must prohibit the Village from enforcing the ordinance against them.

---

[8]The Supreme Court made this clear in *Ward* where it said, "This less restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of a time, place, and manner regulation. . . . Instead, our cases quite clearly hold that restrictions on time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech." *Ward*, 491 U.S. at 797 (internal citations and quotation marks omitted).

We disagree. There can be little doubt that the governmental interests the Village seeks to promote--protecting its residents from fraud and undue annoyance in their homes--are sufficiently significant. *See Ward*, 491 U.S. at 796; *Hynes*, 425 U.S. at 616-17.[9] And, the harm the

---

[9]Contrary to Watchtower's assertions at oral argument, the Court in *Martin v. City of Struthers* did not hold that a government's interest in protecting its residents from undue annoyance in their homes is insufficient to uphold an ordinance such a Stratton's. At best, the Court said that such an interest is insufficient to uphold an ordinance flatly prohibiting door-to-door canvassing. *See Martin*, 319 U.S. at 144. Further, Watchtower's argument demonstrates a misunderstanding of how the ordinance serves the Village's interest in protecting its residents from undue annoyances. The interest primarily supports the portion of the ordinance prohibiting canvassers from going to the doors of residents who have indicated they wish to be left alone. It does so by (1) attaching a criminal penalty to canvassers who ignore those wishes and (2) requiring identification from the canvasser prior to canvassing so that if he does ignore the wishes of the residents, the Village has information that will assist it in prosecuting the canvasser, thereby adding to the likelihood that a canvasser will be deterred from canvassing such residents. Nothing the Supreme Court has said suggests that this is not a sufficient interest to support a municipality promulgating a content-neutral ordinance such as Stratton's. In fact, the Court's opinions seem to suggest the opposite.

> The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free society. . . . Our prior decisions have often remarked on the unique nature of the home, the last citadel of the tired, the weary, and the sick, . . . and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.
>
> One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear . . ., the home is different. That we are captives outside the sanctuary of the home and subject to objectionable speech . . . does not mean we must be captives everywhere. . . . Thus, we have repeatedly held that individual's are not required to welcome unwanted speech into their homes and that the government may protect this freedom.

*Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (internal citations and quotation marks omitted); *see also Hynes*, 425 U.S. at 616-17. Several of